In the Matter of FLUSHINGSIDE REALTY AND CONSTRUCTION COMPANY, Petitioner.

FRANK SAKOFF et al., Doing Business as SWEETHEART SHOPS, Respondents.

Supreme Court, Special Term, Queens County, November 28, 1945.

*Isaac Rothman* for petitioner.

*Walter Lubarsky* and *Joseph S. Wohl* for respondents.

Hooley, J. This is an application pursuant to chapter 314 of the Laws of 1945 for an order fixing the reasonable rental of a store which is occupied by the respondents.

Petitioner is the lessee of certain premises under a master lease acquired in 1933, expiring in 1967. Petitioner erected thereon in 1933 at a cost of $11,000 the existing business structure, consisting of a one-story building containing five stores. Under that master lease petitioner pays an annual ground rent of $6,492 net to the fee owner, and the taxes, assessments, water charges and insurance premiums.

Only the corner store of the building is involved in this controversy. The petitioner sublet that store to respondents for one year commencing on September 1, 1943, with a renewal option for a term of eleven months. The renewed term expired on July 31, 1945, and the respondents continue to occupy said space. The monthly rent paid by respondents for this corner store on June 1, 1944, was $225. The emergency rent therefor is 115% thereof or $258.75. The petitioner seeks a rental of $400 per month.

The total gross actual income today from the premises is $9,465 per year, made up as follows:

| | | |
|---|---|---:|
| 1. | From respondents | $3,105 |
| 2. | From Kanovitz Bros. | 3,600 |
| 3. | From Di Cataldo | 780 |
| 4. | From Seltzer | 1,200 |
| 5. | From the newly rented store | 780 |
| | Total | $9,465 |

The petitioner claims a yearly operating expense of $10,980, made up as follows:

| | |
|---|---:|
| Ground rent | $6,492.00 |
| Taxes | 2,812.80 |
| Water | 16.00 |
| Insurance | 100.00 |
| Management fees of 5% | 473.25 |
| Depreciation on leasehold on land which expires in 1967 | 460.00 |
| Depreciation on building | 326.00 |
| Maintenance | 300.00 |
| Total | $10,980.05 |

The question here is, may the petitioner include as part of his operating expense the ground rent, the management fee and depreciation as set forth above. No decision upon the precise question as to ground rent, which is here involved, has been brought to the attention of the court.

The procedure to be followed by the court in arriving at the reasonable rent is purely statutory. Section 4 of chapter 314 of the Laws of 1945, reads in part as follows: " A net annual return of six per centum on the fair value of the entire property including the land plus two per centum of principal for amortization of any mortgages thereon shall be presumed to be a reasonable return." Before the court can apply the formula fixed by such statute as to what constitutes a reasonable rent, it must determine the fair value of the property, the amount of the mortgage thereon, the cost of maintenance and operation and the amount of real estate taxes (*Matter of Frankel [Hatters' Oakhide Boxes]*, 269 App. Div. 531).

The real property in question is assessed at $96,000 which, in this case, is the fair value. In accordance with the formula afore-mentioned, 6% thereof, i.e., $5,760, is presumed to be a reasonable return per annum. There is no mortgage covering the premises.

Section 4 of chapter 314 of the Laws of 1945 also requires that the landlord shall serve a bill of particulars setting forth, among other things, if he be a lessee and not the owner, the name and address of the lessor and the rent agreed to be paid. Petitioner argues therefrom that this indicates that the rental so paid shall be figured as part of the operation costs of the property. With this contention the court cannot agree.

The clear intent of the statute is that upon any application in this period of emergency to increase the rentals of business property more than 15% over the June 1, 1944, rentals a 6% net return upon the fair value of the real property shall be presumed to be a fair rental or return upon the property, where the property is unmortgaged. The Legislature did not intend a 6% return to the owner and a 6% return for each subsequent lessor. Nor did the Legislature intend that by the simple expedient of adding a lessor's ground rent to the operation expense, such a result could be accomplished. Ground rent like other rent is essentially a return from the premises and not an expense of operation. It is true that in the case at bar the rentals are divided between the owner and the petitioner lessor. But to construe the statute so that each would be entitled to at least 6% of the value would be disastrous to the tenants, in that legal

sanction would be given to oppressive rents sought to be avoided during the period of public emergency. The question becomes clearer if we consider that situations undoubtedly exist where there is more than one sublessor of an entire premises. Following the petitioner's theory each of these in turn would be entitled to net 6%. The mere suggestion of such a possibility demonstrates the fallacy of petitioner's contention. The intent of the Legislature was clearly that in a proceeding under said statute the tenants in business property should not be called upon to pay rentals which would total more than 6% over and above the ordinary operation and maintenance charges upon the property.

In *Ward* v. *Stillwell* (118 Misc. 462, affd. 204 App. Div. 875), which was decided in 1922, and which involved a somewhat similar statute (L. 1920, ch. 944) enacted after World War I in relation to defenses in actions based upon unjust, unreasonable and oppressive agreements for rent under the stress of the conditions then prevailing, the lower court computed the reasonable rental value of certain premises between a lessor and a sublessee, on the basis of the ground rent, plus expenses and a 10% profit thereon. The Appellate Division affirmed the decision of the Appellate Term which reversed the lower court's calculations, holding that the proper method for fixing a reasonable rent under the statute was by computing the allowable percentage upon the assessed valuation, less the amount paid for taxes, insurance, repairs and depreciation, without giving any consideration to the ground rent paid by the lessor.

The bill of particulars required to be served under the statute (L. 1945, ch. 314, § 4) must set forth the cost of maintenance and operation of the building during the preceding year, the kind, quality and quantity of services furnished during such year, and such other facts as the landlord claims affect the net income of the entire building, or the reasonableness of the rent to be charged. It is upon these facts in the bill of particulars that issue is to be joined. The court does not agree that a precise formula is thus set up for the debit side of the ledger which does not permit it any discretion with respect to such items as depreciation or management.

In *Hall Realty Co.* v. *Moos* (200 App. Div. 66), also involving chapter 944 of the Laws of 1920, which was similar to the current statute with respect to the bill of particulars, the court said that depreciation was a proper charge. So, too, depreciation was allowed in the case of *Ward* v. *Stillwell* (*supra*), which

case resembled the one at bar in that it involved a situation between a lessor and sublessee.

At the end of the lessor's term, it has nothing left and it would be manifestly unfair not to allow depreciation as a charge. The court will allow the petitioner to deduct as operation expenses the depreciation and management fees as asked for in its petition but will disallow the ground rent. This will make the operating expenses $4,488.05, which deducted from gross income of $9,465, leaves a return of $4,976.95. The reasonable rent for the premises, following the formula of the statute, is $5,760. This allows the petitioner an increase of $783.05 in the annual rents. All of the stores, other than that occupied by the respondents, appear to be rented for as high rentals as are reasonable under the statute. In comparison therewith the rent for the store in question, which is the corner store, and by far the most valuable, is disproportionately low. Accordingly, the court will allow such increase of $783.05 per annum in the rent to be paid by respondents, making the monthly rent for such corner store the sum of $324, which the court finds to be reasonable.

It is to be remembered that the emergency is only temporary in character and that the rent fixed by the court herein as reasonable and the return to the landlord will be substantially higher than it was in 1944 and prior thereto in an era when the parties themselves voluntarily agreed upon the amount of rentals unhampered by statutory regulations.

Settle order on notice.